UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Northern Division

|  |  |  |
|---|---|---|
| KEITH DAVIS, JR, et al. | * | |
| Plaintiffs, | * | |
| v. | * | Civil Action No.: 1:26−cv−00799−ELH |
| MAYOR AND CITY COUNCIL, | * | |
| OF BALTIMORE, *et al.* | * | |
| | * | |
| Defendants. | * | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
### MOTION TO DISMISS PLAINTIFFS AMENDED COMPLAINT

Defendant, Mayor and City Council of Baltimore (the "City"), by its undersigned attorneys and pursuant to Federal Rule of Civil Procedure 12(b)(6), respectfully submits this Memorandum of Law in Support of its Motion to Dismiss the Plaintiffs' Amended Complaint.

### INTRODUCTION

On January 12, 2026, Plaintiffs Keith Davis, Jr. and Kelly Davis filed a Complaint in the Circuit Court for Baltimore City against Lane Eskins, Catherine Kerr (referred to herein as Catherine Filippou)[1], Anthony Batts[2], the City, and Marilyn Mosby[3]. *See* ECF No. 1-3. On February 26, 2026, Defendants Anthony Batts and the City removed the case to this Court. ECF

---

[1] Plaintiffs name Catherine Kerr as a defendant in this matter, ECF No. 10, but refer to her throughout the Complaint as Catherine Filippou. Accordingly, for consistency, Defendant refers to Catherine Kerr as Catherine Filippou throughout this memorandum.

[2] Plaintiff sues Former Commissioner Anthony Batts in his individual and official capacities. Am. Compl. ECF. No. 10, ¶ 27. Commissioner Batts contemporaneously files his own motion to dismiss Plaintiffs' Amended Complaint.

[3] Plaintiffs Amended Complaint includes various allegations and claims against Defendant Mosby. Those allegations do not affect the issues or arguments addressed here and are therefore not discussed in this memorandum.

No. 1.  On March 6, 2026, Plaintiffs filed a First Amended Complaint.  ECF No. 10.  The Amended Complaint did not add or remove any Defendants from the original Complaint.

Plaintiffs' Amended Complaint asserts the following causes of action: Count I—42 U.S.C. § 1983 (supervisory liability) against Defendant Anthony Batts in his individual capacity; Count II—42 U.S.C. § 1983 (excessive force, Fourth Amendment) against Defendant Lane Eskin; Count III—42 U.S.C. § 1983 (fabrication of evidence, Fourth and Fourteenth Amendments) against Defendant Catherine Filippou; Count IV—42 U.S.C. § 1983 (malicious prosecution, Fourth Amendment) against Defendants Lane Eskin and Catherine Filippou; Count V—42 U.S.C. § 1983 (municipal liability under *Monell*) against Defendant Anthony Batts in his official capacity and the City; Count VI—Maryland Declaration of Rights, Articles 24 and 26, against Defendants Lane Eskin, Catherine Filippou, and the City; Count VII—common law malicious prosecution against Defendants Lane Eskin and Catherine Filippou; Count VIII—intentional infliction of emotional distress against Defendants Lane Eskin and Catherine Filippou; Count IX—loss of consortium (derivative) against all Defendants alleged to have caused the fabrication and malicious prosecution; Count X—42 U.S.C. § 1983 (First Amendment retaliation) against Defendant Marilyn Mosby in her individual capacity; and Count XI—defamation against Defendant Marilyn Mosby in her individual capacity. *See* Am. Compl., ECF No. 10.

The City moves to dismiss Plaintiffs' Amended Complaint with prejudice and without leave to amend because the City was not liable for the actions or inactions of the Baltimore Police Department ("BPD") and/or its officers at the time of the incident alleged.

2

## FACTUAL BACKGROUND[4]

### *Facts Related to Plaintiff Keith Davis' Arrest and Subsequent Prosecutions*

On June 7, 2015, Plaintiff Keith Davis, Jr. was present near the intersection of Reisterstown Road and Belvedere in Baltimore City when he heard someone yell "gun" and ran from the area. ECF No.10, Am. Compl. ¶ 30. Plaintiff then ran into a mechanic's garage located at 5202 Eleanora Avenue to take cover. *Id*. ¶ 31. At that time, Baltimore Police Department officers, including Defendants Lane Eskins and Catherine Filippou, entered the area and discharged their service weapons into the garage. *Id*. ¶ 33. Plaintiff was struck by gunfire and sustained serious injuries. *Id*. ¶¶ 36–37. Following the shooting, Plaintiff was transported to Sinai Hospital, where he remained for several days before being discharged to custody. *Id*. ¶¶ 38–39.

Plaintiff alleges that a subsequent police investigation determined that ballistic evidence recovered from the scene came from police firearms. *Id*. ¶ 40. Officers arrested Plaintiff pursuant to a warrant obtained on June 13, 2015, and executed on June 14, 2015. *Id*. ¶ 41. Plaintiff further alleges that officers recovered his personal property from the scene and later found a firearm on a refrigerator inside the garage. *Id*. ¶¶ 42–43. Plaintiff did not possess that firearm, and officers falsely attributed it to him. *Id*. ¶ 44. Officers then used this evidence to support his arrest and subsequent prosecutions. *Id*. ¶ 46.

Plaintiff was thereafter charged in the Circuit Court for Baltimore City with multiple offenses arising from the June 7, 2015 incident and was tried in February 2016. *Id*. ¶ 50. He was acquitted of those charges. *Id*. ¶ 51. He was subsequently indicted on additional charges, including murder and related firearm offenses, based on the same underlying events. *Id*. ¶ 52. In a separate

---

[4] Defendants' factual summary includes the recitation of facts as pled in the Amended Complaint. Defendants' recitation of Plaintiffs' facts should not be construed as a concession or admission of any of the facts contained therein.

criminal proceeding, case number 115337016, he was charged and prosecuted for firearm-related offenses, and a jury returned a verdict convicting him of constructive possession of a firearm while acquitting him of other firearm charges. *Id.* ¶ 53. The Amended Complaint contains no allegations that this conviction was overturned, vacated, or otherwise invalidated on appeal or through post-conviction relief.

Over the following years, he was subject to multiple other criminal proceedings, including several trials that resulted in mistrials or other post-trial rulings. *Id.* ¶¶ 54–57. He remained incarcerated during this period and faced additional charges in a separate case while in custody. *Id.* ¶ 58. On January 13, 2023, the State entered nolle prosequis as to the remaining charges, and he was released from custody. *Id.* ¶ 61. During his incarceration, he did not receive adequate medical or mental health care for injuries sustained during the June 7, 2015 incident. *Id.* ¶ 62.

### *Facts Related to Plaintiffs 1983 Supervisory Liability Claim Monell Claim*

Plaintiffs allege that prior to June 7, 2015, the BPD maintained a pattern or practice of using excessive force and pursuing criminal charges to justify that force. I*d.* ¶ 63. In support, Plaintiffs rely on findings from a 2016 United States Department of Justice report concerning the BPD. *Id.* ¶ 64. Plaintiffs also cite various unrelated incidents involving alleged uses of force by officers occurring prior to June 7, 2015. *Id.* ¶ 65. Plaintiffs further allege that media reporting described prior officer-involved shootings in the years preceding the events at issue. *Id.* ¶ 66.

With respect to the individual officers, Defendants Eskins and Filippou had prior allegations of misconduct or use of force before June 7, 2015. *Id.* ¶¶ 67–68. Policymakers, including the Police Commissioner Anthony Batts and the City, were aware of these patterns and failed to take corrective action through training, supervision, or discipline. *Id.* ¶ 69. This failure is characterized as deliberate indifference and as resulting in a policy or custom that caused the

events at issue. *Id*. ¶ 70. Following the June 7, 2015 incident, an internal affairs investigation was initiated concerning the involved officers, including Defendants Filippou and Eskins. *Id*. ¶¶ 70B–70C. Commissioner Batts failed to take any corrective action in response to the known deficiencies in the Department. *Id*. ¶ 70D. Based on these allegations, Plaintiffs aver that the conduct of Defendants Filippou and Eskins was the foreseeable product of an alleged pattern or practice within the BPD. *Id*. ¶ 71.

## STANDARD OF REVIEW

### A.    Federal Rule of Civil Procedure 12(b)(6)

A motion to dismiss for failure to state a claim under Rule 12(b)(6) serves to test the legal sufficiency of the complaint. *See, e.g.*, *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008); *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). To survive a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," thereby "nudg[ing] their claims across the line from conceivable to plausible." *Aziz v. Alcolac, Inc.*, 658 F.3d 388, 391 (4th Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Semenova v. Maryland Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015). Although courts must generally accept the allegations of a complaint as true, that principle is "inapplicable to legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In other words, courts "are not bound to accept as true a legal conclusion

couched as a factual allegation" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

In analyzing the sufficiency of a pleading, the Fourth Circuit has determined that "we need not accept the legal conclusions drawn from the facts," nor "unwarranted inferences, unreasonable conclusions, or arguments." *Glassman v. Arlington Cnty.*, 628 F.3d 140, 146 (4th Cir. 2010) (quoting *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008)) (internal quotation marks and citations omitted); *Papasan v. Allain*, 478 U.S. 265, 286 (1986). "This approach recognizes that 'naked assertions' of wrongdoing necessitate some 'factual enhancement' within the complaint to cross 'the line between possibility and plausibility of entitlement to relief.'" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 557). "At bottom, determining whether a complaint states on its face a plausible claim for relief and therefore can survive a Rule 12(b)(6) motion will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not show[n] – that the pleader is entitled to relief . . . ." *Id.* (quoting *Iqbal*, 556 U.S. at 679) (quotations omitted). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012). Once a pleading is stripped of its allegations that are not entitled to truth, the court then determines if the remaining factual allegations state a plausible claim for relief. *See Iqbal*, 556 U.S. at 677-83; *Twombly*, 550 U.S. at 555-70; *Glassman*, 628 F.3d at 145-150; *Giacomelli*, 588 F.3d at 194-97.

6

Additionally, a plaintiff fails to state a claim where the allegations on the face of the complaint show an affirmative defense would bar recovery. *Jones v. Bock*, 549 U.S. 199, 214-15 (2007) (citing Fed. R. Civ. P. 8(c)). In evaluating a complaint, unsupported legal allegations need not be accepted. *Revene v. Charles Cty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989). Legal conclusions couched as factual allegations are insufficient, *Ashcroft*, 556 U.S. at 678, as are conclusory factual allegations devoid of any reference to actual events. *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

## ARGUMENT

**I.    THE CITY DID NOT CONTROL THE BPD OR ITS EMPLOYEES AS A MATTER OF MARYLAND LAW AT THE TIME OF THE EVENTS ALLEGED IN THE AMENDED COMPLAINT.**

Plaintiffs' Amended Complaint centers on allegations that BPD officers Eskin and Filippou used excessive force on June 7, 2015, and then provided false information to support criminal prosecutions. Am. Compl. *passim*. Even accepting these allegations as true for purposes of this Motion, Plaintiffs cannot state a viable claim against the City, either directly or vicariously, because, at the time of the alleged events, the City did not employ, supervise, or control BPD officers.

At the time of the June 7, 2015 incident, Maryland law clearly established that BPD was a State agency, not a City agency, and its officers were not City employees. *See Mayor & City Council of Balt. v. Clark*, 404 Md. 13, 23 (2008) ("the Baltimore Police Department is not an agency of the City of Baltimore and has not been for some time"); *Clea v. Mayor & City Council of Balt.*, 312 Md. 662, 669–70 (1988) (holding that Baltimore City is not the employer of BPD officers for tort liability purposes). Although Maryland law now provides for local control of BPD

effective January 1, 2025, that change is irrelevant here.[5]  Plaintiffs' claims arise from events in

2015, and the *Monell* allegations rely on purported patterns and incidents that predate those events.

*See* Am. Compl. ¶¶ 63–68. Those allegations necessarily involve a period when BPD was a State

agency, and the City's potential liability must be assessed under the law in effect at that time.

Consistent with that framework, courts in this District repeatedly held that the City cannot

be held liable under 42 U.S.C. § 1983 for the conduct of BPD officers because it lacked the

requisite control.  As this Court explained, "the City does not sufficiently control the BPD to be

responsible for Baltimore police officer conduct under § 1983." *Grim v. Balt. Police Dep't*, 2019

WL 5865561, at *27 (D. Md. Nov. 8, 2019) (quoting *Estate of Anderson v. Strohman*, 6 F. Supp.

3d 639, 644 (D. Md. 2014)); *see also Fish v. Mayor & City Council of Balt.*, 2018 WL 348111, at

*3 (D. Md. Jan. 10, 2018) ("BPD officers are not employees of the City as a matter of law.").  The

late Judge Catherine Blake, of this District further summarized this issue in *Earl v. Taylor*, 2021

WL 4458930, (D. Md. Sept. 29, 2021), stating:

> In 2014, in the case of *Estate of Anderson v. Strohman*, Judge George Russell
> addressed previously conflicting caselaw and determined that the City of Baltimore
> is not, for this purpose, in control of the BPD. 6 F. Supp. 3d 639, 646 (D. Md. 2014)
> (holding "based on governing Maryland and federal law, [ ] a § 1983 claim cannot
> be brought against the City for Baltimore police officer conduct because it does not
> sufficiently control the BPD and cannot be considered to employ Baltimore police
> officers. Municipal liability under *Monell* cannot attach to the City for the
> unconstitutional actions of Baltimore police officers"). I agree. *See*, *e.g.*, *Fish v.
> Mayor & City Council of Baltimore,* No. CCB-17-1438, 2018 WL 348111, at *3
> (D. Md. Jan. 10, 2018); *Holloman v. Rawlings-Blake, et al.*, No. CCB-14-1516,

---

[5] Baltimore City voters ratified a Charter amendment authorizing the transfer of the Baltimore Police Department to City control effective January 1, 2023. However, as reflected in the Editor's Note to Article 17 of the Baltimore City Code ("Police Department"), local control was not complete at that time because the General Assembly had not yet repealed Article II, § (27) of the City Charter, which limited the City's authority over the Police Commissioner. The General Assembly repealed that provision through Chapter 947 of the Acts of 2024, which following voter ratification at the 2024 general election, became effective January 1, 2025. *See* Balt. City Code, Art. 17, Editor's Note, available at https://codes.baltimorecity.gov/us/md/cities/baltimore/code/17 (last visited April 3, 2026). Thus, before the official repeal of Article II, § 27 of the City Charter, effective January 1, 2025, the City "was not permitted to regulate or supervise the BPD." *See Nicholson v. Baltimore Police Dep't*, No. CV DKC 20-3146, 2021 WL 1541667, at *10 (D. Md. Apr. 20, 2021).

2014 WL 7146974, at *4 (D. Md. Dec. 12, 2014). *Id*. at *3.

Consequently, because the City exercised no control over BPD at the time of the events in question (June 2015 and earlier), it cannot be held liable for any alleged tortious conduct committed by BPD or the individual BPD officers named as Defendants.  *See Estate of Anderson v. Strohman*, 6 F. Supp. 3d 639, 644 (D. Md. 2014) ("the City does not employ Baltimore police officers and is not liable for their conduct under state law"); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986) ("Municipal liability is limited to action for which the municipality is actually responsible."); *Nicholson v. Balt. Police Dep't*, 2021 WL 1541667, at *10 (D. Md. Apr. 20, 2021) (dismissing all claims against the City, including state constitutional claims, because it is not liable for the conduct of BPD officers).

Accordingly, because the City had no legal control over BPD or its officers at the time of the alleged events, Counts V (*Monell* claim against the City)[6] and VI (Maryland Declaration of Rights, Articles 24 and 26) must be dismissed as a matter of law.

## II.    ADOPTION AND INCORPORATION.

The City anticipates a separate Motion to Dismiss to be filed by co-Defendants Anthony Batts, Catherine Filippou and Lane Eskins.  The City hereby adopts and incorporates the arguments made in those motions to the extent that they do not conflict with any arguments made within the City's Motion to Dismiss and supporting Memorandum of Law.

---

[6] Commissioner Batts, in his official capacity, addresses the substance of Plaintiff's *Monell* argument in his motion to dismiss. For all the reasons stated therein, the Amended Complaint fails to state a claim upon which relief can be granted.

## CONCLUSION

Plaintiffs' Amended Complaint fails as a matter of law against the City.  Accordingly, the City respectfully requests this Court dismiss Plaintiffs' Amended Complaint in its entirety with prejudice and without leave to amend.

Respectfully submitted,

_/s/_____

Brent D. Schubert (Fed. Bar No. 19593)
Deputy Chief Solicitor
Kara K. Lynch (Fed. Bar No. 29351)
Chief Solicitor
Baltimore City Law Department
Office of Legal Affairs
100 N. Holliday Street, Room 101
Baltimore, Maryland 21202
Telephone: (410) 396-2496
Facsimile:   (410) 396-2126
brent.schubert@baltimorepolice.org
kara.lynch@baltimorepolice.org.
*Counsel for Defendant Mayor and City*
*Council of Baltimore*

10